**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | |
|---|---|
| LISA L. EDWARDS, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | )   CASE NO.  2:20-cv-374 |
| | ) |
| DRIVELINE RETAIL | ) |
| MERCHANDISING, INC., | ) |
| | ) |
| Defendant | ) |

*PLAINTIFF'S COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF*

*I.  INTRODUCTION*

Plaintiff Lisa L. Edwards ("Edwards") is pursuing claims under the the Fair Labor

Standards Act ("FLSA") and the Indiana Wage Claims Statute against her  former employer,

Driveline Retail Merchandising, Inc. ("Driveline").

*II.  FACTUAL ALLEGATIONS*

1.      Edwards is a resident of Terre Haute, Vigo County, Indiana.  Edwards worked for

Driveline as a "merchandiser" from approximately late October 2019 until the last date of her

employment on or about March 1, 2020.  Edwards worked for Driveline at customer business

locations in and around the Terre Haute, Indiana area.  Edwards immediate supervisor was

Elizabeth Stephens, who is believed to live and work in the Evansville, Indiana area.

2.      Edwards is pursuing wage and hour claims against Driveline for its violations of

her rights under the FLSA and the Indiana Wage Claims Statute, I.C. 22-2-9.

3.      Edwards did good work and met all of Driveline's reasonable expectations.

4.      Driveline provides in-store marketing and retail services to consumer products

1

companies and national retailers. Edwards is a former Driveline employee who worked as an hourly-paid "Merchandiser." As a Merchandiser, Edwards performed services related to the display of products and promotional materials in retail stores.  Driveline promised Edwards wages paid at the rate of $10.00 per hour.

5.     Edwards began each workday at home by logging on to an app on her cell phone that Driveline called "Smart PM."  Edwards received her job assignments for the day through this "Smart PM" job portal.  Edwards also received and responded to email messages from Driveline supervisors, downloaded and printed work orders, reviewed instructions for each merchandising job, and mapped routes to store locations.  Edwards was also required to print work authorization letters and work completion forms to be signed by the manager of each customer's store in which she worked.  In addition, Edwards began each day by loading into her personal vehicle displays and other marketing materials sent to her by Driveline that she then transported to her assigned retail locations. After completing these administrative tasks at home, Edwards would drive to her first retail store of the day.

6.     After completing her last assigned store call of the day, Edwards was required to again log on to Driveline's Smart PM app.  Edwards uploaded signed work orders associated with in-store work performed that day, completed questionnaires associated with each work order,  uploaded digital photographs taken during the day associated with each work order and completed and submitted inventory reports.

7.     As described above, Driveline required Edwards to use her own vehicle for work. Driveline did not reimburse Edwards' mileage in any way and Driveline did not compensate Edwards at all for her work time spent traveling in her car (first drive of the day, drive from one

customer location to the next during the work day, last drive to her home at the end of the day).

8.     Additionally, Driveline did not even pay Edwards at her full hourly rate of $10.00 for time she spent performing work at a customer location.  Instead, Driveline would only pay Edwards an amount equal to $10.00 multiplied by an amount of time Driveline estimated for that particular job for the particular customer.  Almost always, the estimated unit of time Driveline used for pay was far less than the actual time it took Edwards to complete the task at the customer location.  This "estimated time" system resulted in Edwards being significantly underpaid wages in every single work week because 1) she was not paid for all of her hours of work spent at the customer location itself, and 2) Edwards was paid nothing at all for the additional hours of work she spent traveling to and from customer locations during her work day.  Edwards' underpaid wages were further impacted by the fact that Driveline refused to reimburse Edwards at a proper mileage reimbursement rate (the IRS rate at the time was $0.585 per mile) for use of her personal vehicle.  This failure to pay wages for all hours of work resulted in FLSA minimum wage violations and FLSA overtime violations.  In many of the weeks at issue, Edwards actually worked in excess of 40 hours in the work week.  She was never paid overtime at an overtime rate of compensation.

9.     While employed, Edwards made express complaints to her supervisor, Elizabeth Stephens, that she was not being paid for all of her hours worked.  It was Ms. Stephens that first told Edwards she was being paid based upon estimated hours rather than actual hours of work.  Further, Edwards attempted on several occasions to report or "override" the Driveline estimated hours of pay in order to obtain wages for all of her actual hours of work, but Edwards was not successful and was not properly or fully compensated for all of her actual hours of work.

3

10.     Based upon her experience and belief, Edwards estimates that Driveline underpaid her for 10 - 20 hours of work every week.  In at least half of her work weeks, Edwards worked more than 40 hours and up to 50 actual hours of work, but Driveline never paid overtime to Edwards at an overtime rate of pay.  Additionally, because she was only paid $10.00/hour for some of her hours of work, was not paid for 10 or more hours of work each week and was subjected to kickbacks because she provided her own vehicle to drive for work and was not reimbursed, Edwards was subjected to sub-minimum wages in multiple work weeks during her Driveline employment.

11.     As described above, by failing to pay mileage reimbursement to Edwards at all for use of her personal vehicle driving for work, Driveline was violating the FLSA's requirement that an employee be paid a minimum wage for each hour worked that is free and clear, unconditional and not subject to a kickback.  29 CFR § 531.35.

12.      Throughout Edwards' entire period of employment with Driveline, Driveline failed and refused to pay Edwards for all of her hours worked and, in so doing, also failed to fully pay a minimum wage for each hour worked to Edwards in certain weeks and failed to compensate Edwards at all for all overtime work performed.  Driveline's wage violations committed against Edwards include, but are not limited to, the following:

a.      Driveline did not accurately record all of Edwards' hours worked and Driveline did not fully compensate Edwards for all of her hours worked;

b.      Driveline did not pay Edwards for all of her hours worked based upon a continuous work day method, meaning, Driveline did not measure Edwards' hours of work from a first principal activity each day and pay to a last principal

activity, nor did Driveline pay Edwards for all of her hours of work from a first principal activity each day and pay to a last principal activity;

c.    As described above, Driveline did not pay Edwards for all work-required travel time that occurred during Edwards' continuous workday, meaning, Driveline did not pay Edwards for all travel time occurring after Edwards' first principal activity each day and all travel time occurring prior to Edwards' last principal activity of each day; and

d.    Driveline did not pay Edwards for her overtime hours of work at an overtime rate of pay - one and one-half times her full regular rate of pay.

13.    By way of this Complaint, Edwards seeks all wages owed to her, including all earned wages, all unpaid wages, all minimum wages, all overtime compensation, all liquidated damages, plus all statutory penalties for late payment of wages. Additionally, Edwards seeks payment of all of her reasonable attorney's fees, costs and expenses. With respect to Edwards' uncompensated wages and overtime, Driveline's violations of Edwards' rights under the FLSA and the Indiana Wage Claims Statute, I.C. 22-2-9, were willful, in bad faith (and certainly not in good faith), warranting the application of the FLSA's three year statute of limitations and liquidated damages under the Indiana Wage Claims Statute.

## II.  JURISDICTION AND VENUE

14.    Edwards' Complaint raises federal questions of law and this Court has jurisdiction over the subject matter of this complaint pursuant to 28 USC § 1331 and 29 USC § 201 et seq. This Court has supplemental jurisdiction over Edwards' Indiana statutory wage claims, which are based upon a common set of facts with her Federal claims.

15.     This Court is the appropriate venue for this cause of action as Edwards worked

for Driveline in and around Vigo County, Indiana and the surrounding counties.  28 USC § 1391.

### III.  PARTIES

16.     Edwards is a resident of Terre Haute, Vigo County, Indiana.

17.     Driveline employed Edwards to work for it and serve clients at their business

locations in and around Vigo County, Indiana and surrounding counties.

### IV.  ADMINISTRATIVE PROCEDURES

18.     Because she was terminated, Edwards has reported Driveline's failure to pay her

all of her wages to the Indiana Department of Labor, Wage and Hour Division.  Edwards has

obtained permission to pursue this matter privately, with her attorney serving as the Indiana

Attorney General's "designee."  That permission was issued by the Office of the Indiana

Attorney General by letter back-dated to June 9, 2020, but not received by Edwards' attorney

until July 21, 2020.  This permission allows Edwards to pursue her wage claim under I.C. 22-2-

9-2 and I.C. 22-2-9-4, utilizing the remedial provisions of I.C. 22-2-5-2.

### V.  STATEMENT OF CLAIMS

#### A.  CLAIM UNDER THE FAIR LABOR STANDARDS ACT

19.     Edwards incorporates herein by reference paragraphs 1 - 18 above.

20.     Driveline is a covered employer subject to the provisions of the Fair Labor

Standards Act, as it is an "enterprise" with gross operating revenues in excess of $500,000 per

year in 2019 and 2020.  Further, Driveline is an "employer" as that term is defined under the

FLSA at 29 USC § 203(d).

21.     By not paying Edwards at all for some of her periods of time worked and by not

paying Edwards for her overtime hours worked at an overtime rate of pay, Driveline has violated Edwards' rights to be paid a minimum wage for every hour worked and, for some hours of work, overtime at an overtime rate of pay under the Fair Labor Standards Act.  Edwards was a non-exempt employee.

22.    Driveline's failure to comply with the Fair Labor Standards Act's provisions regarding minimum wages and overtime compensation has been willful, without justification and performed in bad faith.

23.    Edwards seeks all available damages, including her unpaid wages, unpaid minimum wages, overtime compensation itself, liquidated damages, payment of reasonable attorney's fees, costs and expenses, and any and all other damages to which she may be entitled for Driveline's violations of the Fair Labor Standards Act.

### B.  CLAIM UNDER THE INDIANA WAGE CLAIMS STATUTE

24.    Edwards incorporates herein by reference paragraphs 1 - 23 above.

25.    By way of this Complaint, Edwards is seeking all available damages, including unpaid wages, damages for late payment of wages, and all available liquidated and/or treble damages, plus any and all attorney's fees, costs, and expenses, and any other damage to which she may be entitled pursuant to Indiana Law.  Pursuant to the Indiana Wage Claims Statute, which incorporates I.C. 22-2-5-2, Edwards is seeking payment of unpaid wages and all available damages, including, but not limited to, double the amount of wages due as an additional monetary damage, plus all of her attorney's fees, costs and expenses.

26.    Driveline's failure to pay Edwards her wages 1) on time and 2) in full were acts of bad faith.  Edwards is certainly entitled to payment of all of her earned wages, liquidated

damages for the late paid wages, and liquidated damages for the unpaid wages.  Because she was involuntarily terminated from employment, Edwards' right to damages arises under I.C. 22-2-9-4(b), which incorporates the damages provisions of I.C. 22-2-5-2.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lisa L. Edwards respectfully requests that the Court enter judgment against Defendant Driveline Retail Merchandising, Inc. and issue all available relief to her, including, but not limited to, the following:

1. All damages available under the FLSA, including all unpaid wages, all unpaid minimum wages, unpaid overtime, liquidated damages and payment of all reasonable attorney's fees, costs and expenses;

2. All damages available under the Indiana Wage Claims Statute, including all unpaid and underpaid wages, all liquidated damages, and payment of all reasonable attorney's fees, costs and expenses;

3. Costs;

4. Pre-judgment interest, if available; and

5. Any and all other relief just and proper in the premises.

Respectfully submitted,

HASSLER KONDRAS MILLER LLP

By /s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.
Attorney No. 18038-84
100 Cherry Street
Terre Haute, IN 47807
(812) 232-9691
(812) 234-2881 Facsimile
kondras@hkmlawfirm.com